TAMMY VANALLMAN,                    )
                                    )
        Plaintiff,                  )
                                    )
                                    )    Case No. 4:06-cv-43
v.                                  )    Judge Mattice
                                    )
JOHN E. POTTER in his official capacity )
as Postmaster General and UNITED    )
STATES POSTAL SERVICE,              )
                                    )
        Defendants.                 )

## MEMORANDUM AND ORDER

Plaintiff Tammy Vanallman brings this action against Defendants John E. Potter in his official capacity as Postmaster General and the United States Postal Service claiming that she was subjected to a hostile work environment and retaliated against, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

Before the Court is Defendant's Motion for Summary Judgment [Court Doc. 22]. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.   STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Nat'l Satellite Sports, Inc. v. Eliadis Inc.,

253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.   FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

Plaintiff Tammy Vanallman was hired as a part-time flexible distribution and window

clerk by Defendant United States Postal Service ("USPS") in 1991.[1] (Complaint, Court Doc. 1, ¶ 4.) Plaintiff has worked at the Tracy City post office since 1992 and is still employed there. (Id.) During the events relevant to this lawsuit, Peggy Browning was Plaintiff's supervisor and the Officer-in-Charge ("OIC") of the Tracy City post office. (Id. ¶ 5.) Lecil Nolan, a full-time male clerk who has worked for USPS for more than twenty-five years, was the only other window clerk assigned to Tracy City. (Deposition of Tammy Vanallman ("Pl.'s Dep."), Court Doc. 22-2, pp. 87-88.) John Robertson was the Manager of Post Office Operations (MPOO) who oversaw 104 post offices, including Tracy City, and around 2,500 employees. (Deposition of John Robertson ("Robertson Dep."), Court Doc. 22-3, p. 10-11.) Robertson was also in charge of hiring postmasters for his region. (Id. at 92.)

During her seventeen years with USPS, Plaintiff accumulated the experience and training necessary to serve as a postmaster. ((Affidavit of Tammy Vanallman ("Pl.'s Aff."), Court Doc. 31-3, ¶¶ 6. 11.) In addition to her clerk duties at Tracy City, Plaintiff worked temporarily at a number of other post offices and served as the temporary OIC for three different post offices. (Id. ¶ 4.) As OIC, Plaintiff performed the duties of the postmaster and had full responsibility for the office's day-to-day affairs. (Id. ¶ 5; Robertson Dep. at 216.) Serving as the temporary OIC is considered a training assignment for an eventual promotion to postmaster. (Robertson Dep. at 44.)

---

[1] Plaintiff's claims against Defendant United States Postal Service are identical to those brought against Defendant John Potter in his official capacity as Postmaster General. (Court Doc. 1.) The Defendants have filed a joint Motion for Summary Judgment. (Court Doc. 22.) Accordingly, the Court will refer to both the United States Postal Service and John Potter singularly as "Defendant."

## 1. *Plaintiff's EEO hostile work environment complaint*

Plaintiff served as OIC at the Coalmont post office from December 2004 to March 2005. (Pl.'s Dep. at 246.) Upon her return to Tracy City, Plaintiff's relationship with Browning, her immediate supervisor, deteriorated. (EEO Complaint, Court Doc. 22-20, p. 3.) Plaintiff filed an EEO Complaint on June 28, 2005 alleging discrimination, harassment, intimidation, and a hostile work environment. (*Id.* at 1.) Her EEO complaint detailed the following events.

On April 27, 2005, Browning asked Plaintiff to come over to her desk and sit down because there were a number of issues that they needed to discuss. Browning told Plaintiff that she had been removed from the Coalmont OIC position because of complaints from Coalmont's postmaster. Browning also told Plaintiff that she was going to give Lecil Nolan Saturdays off and that a rural mail carrier would help Plaintiff with the clerk duties on Saturdays. During this conversation, Browning shook her finger in Plaintiff's face and spoke to Plaintiff in a threatening tone. Plaintiff claims that she realized that she was being harassed and discriminated against following this interaction. (*Id.* at 3.)

About two weeks later, Plaintiff called her union to report Browning's decision to have a mail carrier fill in for Nolan on Saturdays. (*Id.* at 4.) A union official called Browning to inform her that such practice was not allowed under the union contract.

Browning then confronted Plaintiff about why she had called the union and told Plaintiff that she had hurt her co-workers' paychecks and that they were all mad at Plaintiff. Plaintiff questioned Browning about why it was so important to give Nolan Saturdays off and Browning responded that he was the senior clerk and had requested Saturdays off and that Browning felt he deserved it. Browning warned Plaintiff that because she had reported

-4-

Browning's use of rural carriers on Saturdays to the union, Plaintiff was not going to get another OIC position because Browning would have no one to fill in for either Plaintiff or Nolan. Browning also informed Plaintiff that Robertson had told her that he could run a report on the Tracy City post office to see how many clerk hours were needed and that, if the report showed that hours would be cut, Plaintiff would likely suffer as she was the part-time flexible clerk. Browning again shook her finger in Plaintiff's face and used a threatening tone which upset Plaintiff significantly. (*Id.* at 5.)

On May 20, 2005, Plaintiff reported to Browning that she had worked at another post office. Browning told Plaintiff that she needed to clear any work at other post offices through Browning. Plaintiff called her union representative about this issue and was informed that she didn't need to go through Browning to obtain work at other post offices. (*Id.*)

Later that day, Browning asked Plaintiff to go out to the back of the post office to talk. Browning told Plaintiff that she needed to "stop walking around acting like [she] had lost [her] best friend" and that nothing Browning did was directed at Plaintiff personally. Browning told Plaintiff that she had wanted to change Nolan's day off again so that it would be Monday but that Robertson told Browning to leave it as it was. Browning also told Plaintiff that Robertson had "made some suggestions of some thing's [sic] that [Browning] could do to" Plaintiff but that Browning said she "didn't believe in retaliation" and "wanted to be fair." Browning informed Plaintiff that Robertson had told her that Plaintiff was not going to get another OIC position. Plaintiff claims that Browning was talking to her like a child during this conversation. (*Id.*)

Besides these specific events, Plaintiff reported to Defendant's EEO office that, on

-5-

a number of occasions, Browning prevented her from getting more hours at other post offices by failing to pass on messages or by telling other postmasters that she was unavailable. (*Id.* at 5-6.) Plaintiff describes other instances in which she felt that Browning was nicer and more cordial to Nolan than she was to Plaintiff. (*Id.*) Browning also instructed Plaintiff that she was not to take a smoke break until after the first class mail had been processed. (*Id.* at 3.) Plaintiff claims that Browning entered unscheduled absences into the timekeeping system when Plaintiff was sick or late for work due to the weather and that no other supervisor had ever done that to her. (Pl.'s Aff. ¶ 22.)

Plaintiff alleges that she dreaded work and accepted placements in other post offices whenever she had the chance so that she could escape Browning's harassment. She eventually took time off from work because Browning's behavior made her upset to the point that she had to take medication. (*Id.* ¶ 23.)

### 2. *Non-selection at Palmer*

On January 18, 2005, USPS posted a vacancy announcement for the Postmaster position at the Palmer post office. (Court Doc. 22-27.) Plaintiff submitted her application on January 31, 2005. (Pl.'s Dep. at 233.) John Robertson, as MPOO for the Palmer post office, was the "selecting official" for the postmaster position. (Robertson Dep. at 15.) On June 7, 2005, Plaintiff was informed that she had been selected for an interview. (*Id.* at 234.)

The interview panel for the Palmer postmaster position consisted of Robertson, Lisa Durham, postmaster of Rising Fawn, Georgia, and Dave Moses, postmaster of Etowah, Tennessee. (Robertson Dep. at 71-74.) They interviewed the selected candidates for the

-6-

postmaster position, including both Plaintiff and Rosanna Cleek, the individual who was eventually hired for the position. (*Id.*)

Upon arrival for her interview, Robertson told Plaintiff "don't let me intimidate you," which Plaintiff took to be a reference to her EEO complaint. (Pl.'s Aff. ¶ 30.) Robertson's remark caused Plaintiff to be upset during her interview and stumble over the first question. (*Id.*; Robertson Dep. at 118.)

After the interviews, Robertson discussed the candidates with the other members of the interview committee, but Robertson alone made the decision as to who to hire. (Robertson Dep. at 72.) The other members of the interview committee agreed that Plaintiff was not the most qualified candidate for the position. (Affidavit of Lisa Durham ("Durham Aff."), Court Doc. 22-9, ¶ 4; Affidavit of Dave Moses ("Moses Aff."), Court Doc. 22-10, ¶ 4.) Robertson chose Cleek because she had been serving as OIC at the Palmer post office and had performed well in that position. (Robertson Dep. at 125.) Cleek had been able to reduce the office's total operating expenses while increasing revenue significantly. (*Id.* at 125-26.) Cleek had also been employed by the USPS the longest of any candidate and Robertson thought that "she deserved the opportunity for it." (*Id.* at 126.)

In a letter from Robertson dated June 30, 2005, Plaintiff was informed that she was not selected for the Palmer postmaster position. (Pl.'s Dep. at 235.) Plaintiff then filed an EEO complaint alleging that the failure to hire her was in retaliation for her EEO hostile work environment complaint. (Pl.'s Aff. ¶ 33.)

### 3. *Non-selection for Sequatchie and Beersheba Springs*

The USPS posted an opening for the postmaster position at the Beersheba Springs

post office and Plaintiff applied on May 23, 2005. (Pl.'s Aff. ¶ 35.) On June 27, 2005, Plaintiff received a letter from a member of the review committee informing her that she had not been selected for an interview. (Id. ¶ 36.) Plaintiff filed an EEO complaint claiming that she was not hired in retaliation for her prior EEO activity. (Id. ¶ 38.)

The USPS posted an opening for the postmaster position at the Sequatchie post office and Plaintiff applied on August 27, 2005. (Pl.'s Aff. ¶ 39.) On October 6, 2005, Plaintiff was notified via a letter from the review committee that she had not been selected for an interview. (Id. ¶ 40.) Plaintiff again filed an EEO complaint alleging that she was not hired in retaliation for her prior EEO activity. (Id. ¶ 43.)

## III. ANALYSIS

Plaintiff claims that she was harassed and subjected to a hostile work environment because of her gender. (Court Doc. 1.) She also claims that she was not hired the postmaster positions in retaliation for her having reported the workplace harassment. (Id.)

An employee may prove claims of discrimination and retaliation under Title VII by either direct evidence or circumstantial evidence. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir.2003). When a plaintiff presents direct evidence of discrimination or retaliation, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999).

-8-

"Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

When, on the other hand, a plaintiff's claims of discrimination are based on circumstantial evidence, the Court applies the burden-shifting analysis initially described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McClain v. NorthWest Community Corr. Ctr Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). That analysis may be summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

The Court will evaluate Plaintiff's claims within this evidentiary structure.

## A. Hostile Work Environment

Section 2000e-2(a) prohibits employers themselves from creating a hostile work

-9-

environment by discrimination based on gender. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986). To establish a *prima facie* case of harassment based on sex, a plaintiff must show that: "(1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)). Defendant does not dispute that, as a female, Plaintiff was a member of a protected class.

### 1. *Whether conduct was based on Plaintiff's sex*

Defendant argues that Plaintiff has failed to establish a *prima facie* case of harassment under Title VII because she has failed to show that the harassment was based on her sex. The crucial inquiry is not whether conduct was related to "sex" in that it was "sexually charged," but whether it was related to the plaintiff's gender. *See E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 520 (6th Cir. 2001). While the harassment need not be sexual, it must evince anti-female animus to be actionable. *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). To establish that harassment is based on sex, a plaintiff "'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Id.* (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). "If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Baugham v. Battered Women, Inc.*, 211 Fed. App'x 432, 438 (6th Cir. 2006).

Defendant argues that, in Plaintiff's deposition, she was unable to name a single

instance of harassment to which she was subjected based on her gender. (Court Doc. 24 at 27.) Plaintiff claims that she has put forth evidence of gender-related harassment in her formal EEO complaint, her day timer, calendar, and notes. (Court Doc. 31 at 22.)

The Court has reviewed all of the evidence and finds that Plaintiff has failed to establish that, but for her gender, she would have been treated differently. In her deposition, Plaintiff was repeatedly asked for examples of how she was treated differently by Browning because of her gender. (Pl.'s Dep. at 213-14.) Plaintiff could not point to a single instance of mistreatment that was based on being a female. (Id.)

In her EEO complaint, Plaintiff describes name-calling, degrading comments, and generally unpleasant interactions between herself and Browning. (Court Doc. 22-20 at 3-5.) While these allegations show that Plaintiff and Browning had a less than ideal working relationship, they do not establish that Plaintiff's gender was the cause of the discord. Instead, it appears that the disharmony was more likely a personality conflict or personal vendetta.

Plaintiff has presented no evidence that Browning ever having made derogatory comments about Plaintiff being a woman or took any action against her merely because she was a woman. (Pl.'s Dep. at 213-14.) No other female employees have complained that Browning harassed them in any way or treated them differently based on their gender. Plaintiff's female co-workers have, however, said that Browning treated Plaintiff worse than them. (Affidavit of Stephanie Ruehling, Court Doc. 31-4, ¶ 4.) This supports the Court's conclusion that the negative relationship between Browning and Plaintiff was more likely a personality conflict than gender discrimination.

Plaintiff's main argument in support of her claim for gender discrimination is that

-11-

Browning favored Lecil Nolan, the full-time male clerk, over her. (Court Doc. 31 at 22.) She claims that Browning explicitly favored Nolan by giving him Saturdays off, leaving Plaintiff as the only clerk at the post office on Saturday. (Id.)

It is undisputed that Nolan had seniority over Plaintiff and that Nolan had requested Saturdays off. (Court Doc. 22-4 at 18.) It is also undisputed that Plaintiff never requested Saturdays off. (Pl.'s Dep. at 109-110.) Even had both Plaintiff and Nolan requested Saturdays off and Browning chosen Nolan over Plaintiff, the fact that Nolan was more senior than Plaintiff would be a non-discriminatory reason for Browning's decision to give him the day off over Plaintiff. Given these facts, the Court fails to see how Browning giving Nolan Saturdays off is evidence of discrimination against Plaintiff based on her gender.

There is evidence that Browning had a better working relationship with Nolan than she did with Plaintiff. There is no evidence, however, that either Nolan's or Plaintiff's gender was the reason for this difference in working relationships. "Personality conflicts between employees are not the business of federal courts." Michael v. Caterpillar Financial Servs. Corp., 496 F.3d 584, 600 (6th Cir. 2007). Plaintiff has failed to establish that these actions were "because of sex rather than simple belligerence." Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000) (refusing to consider post-complaint behavior because it was not based on sex). "Personal conflict does not equate with discriminatory animus." Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998).

Because none of the allegations of discriminatory conduct relate to the Plaintiff's gender, Plaintiff has failed to make out a prima facie case under Title VII. See Baugham

-12-

v. Battered Women, Inc., 211 Fed. App'x 432, 438 ("[I]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.")

## 2. Severe and pervasive conduct

Even had Plaintiff been able to establish that Browning's harassment was due to Plaintiff's gender, she would then be required to show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21. To determine whether conduct is severe or pervasive, the Court must engage in both a subjective and objective analysis. Randolph, 453 F.3d at 733. "Rather than considering each event complained of in isolation, [the Court] must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive." Id. (citing Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir.1997)).

Factors which the Court must consider include: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." Harris, 510 U.S. at 23. "Simple teasing, offhand comments, and isolated incident (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788. "In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.' " Bowman v. Shawnee State

-13-

*Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

The evidence shows that Browning's harassing behavior was pervasive with respect to the frequency with which it occurred. Plaintiff claims that Browning raised her voice at Plaintiff every day. (Court Doc. 31 at 23.) Browning's harassment was not, however, severe. Belittling comments and verbal disagreements are not sufficiently severe so as to create a hostile work environment. *See Barnett*, 153 F.3d at 342-43 (a supervisor's belittling comments and use of plaintiff as the butt of jokes was not hostile work environment).

Plaintiff claims that she was physically threatened when Browning shook her finger in Plaintiff's face during a conversation. (Court Doc. 31 at 24.) But courts have held that shaking a finger in someone's face is not, from an objective standpoint, physically threatening or humiliating. *Hinds v. Chertoff*, 2008 WL 360718, *6 (Feb. 8, 2008) (finding that shaking finger and fist in face of employee was not threatening or humiliating behavior).

The evidence shows that Browning, who was Plaintiff's supervisor at all times relevant to this case, confronted Plaintiff on a number of occasions about work-related issues. While these interactions were obviously unpleasant for Plaintiff and caused her a great deal of mental anxiety, from an objective perspective, they did not rise such a level as to alter her conditions of employment.

Plaintiff argues that Browning's conduct was "so severe that plaintiff Vanallman dreaded going to work" and "had to seek medical treatment." (Court Doc. 31 at 23.) In order to find that Plaintiff has established a *prima facie* case of gender discrimination, however, the Court must determine both that a reasonable person would have found the

-14-

work environment hostile and abusive and that the plaintiff was subjectively offended by the environment. Because the Court finds that Plaintiff has failed to establish a genuine issue of material fact with regard to the objective standard, it need not address the subjective component. *Williams*, 187 F.3d at 566. Plaintiff's subjective reaction to her work environment is not relevant to the Court's analysis of whether a reasonable person would have found the work environment hostile. *Id.*

Plaintiff fails to cite a single case in which a court has held that the plaintiff established a *prima facie* case of gender discrimination on facts similar to those at issue here. The Court's review of relevant legal precedent leads it to the conclusion that Plaintiff's allegations fall woefully short of other cases in which much more severe and pervasive conduct occurred and the courts still held that the discriminatory behavior did not constitute a hostile work environment. *See Bowman*, 220 F.3d at 459-63 (supervisor's "litany of abuses," including rubbing plaintiff's shoulders, grabbing his buttocks, asking him to try out the whirlpool, and asking him to "enjoy himself" by swimming in the pool alone with her was not severe and pervasive); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (concluding an act of battery coupled with two offensive remarks over a six-month period does not create a hostile work environment); *Williams*, 187 F.3d at 559 (holding fifteen separate incidents of sexual harassment over a one-year period, including derogatory remarks, sexually explicit comments, exclusion of plaintiff from certain workplace areas, denial of overtime, and physical touching, was not severe or pervasive enough to create a hostile work environment). Overall, the Court finds that Browning's behavior is akin to the "ordinary tribulations of the workplace" which is insufficient to sustain

-15-

a Title VII action. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff has failed to show a material fact in dispute with regard to whether Browning's harassing behavior was based on Plaintiff's gender and also as to whether Browning's behavior was severe and pervasive. Accordingly, the Court finds that Plaintiff has failed to make out a *prima facie* case of gender discrimination under Title VII.

Defendant's Motion to Dismiss is **GRANTED** with respect to Plaintiff's Title VII hostile work environment claim and such claim is **DISMISSED WITH PREJUDICE**.

## B. Retaliation

After filing her EEO charge, Plaintiff applied for four separate postmaster positions: Palmer, Beersheba Springs, Guetli-Laager, and Sequatchie. (Complaint, Court Doc. 1, p. 3-5.) She was not hired for any of these positions and claims that Defendant's failure to hire her was in retaliation for her having filed an EEO complaint. (*Id.* ¶ 16.)

The elements of a *prima facie* case of Title VII retaliation are as follows: (1) the plaintiff engaged in a protected activity; (2) the exercise of that protected right was known to the defendant; (3) the defendant thereafter took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe and hostile pervasive retaliatory harassment by a supervisor; and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003).

In her response to Defendant's motion for summary judgment, Plaintiff notified the Court that she is no longer pursuing her retaliation claim relating to the Gruetli-Laager postmaster position. (Court Doc. 31 at 31 n.2.) Accordingly, Plaintiff's claim for retaliation

-16-

arising out of her not having been hired for the Gruetli-Laager postmaster position is
**DISMISSED WITH PREJUDICE.**

### 1. *Beersheba Springs and Sequatchie postmaster positions*

Defendant argues that Plaintiff has failed to make out a *prima facie* case of
retaliation with regard to the failure to hire Plaintiff for the Beersheba Springs and
Sequatchie positions. (Court Doc. 24 at 35-37.)

Plaintiff has established the first prong of the *prima facie* case – that she engaged
in protected activity – as she undisputedly filed an EEO charge against Browning prior to
not being hired for these positions. *Cook v. Caldera*, 45 Fed. App'x 371, 376 (6ᵗʰ Cir. 2002)
(filing EEO charge is protected activity). Plaintiff has also met the third prong of the *prima
facie* case – that she was subjected to an adverse employment action – in that the failure
to promote to a position with more material benefits or prestige is a materially adverse
employment action. *National R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 114 (2002).
It is undisputed that a postmaster position would have been a promotion for Plaintiff.

Turning to the second prong of the *prima facie* case – that defendant had
knowledge of the protected activity – the Court must determine whether the "relevant
management decision-makers" had knowledge of the protected activity. *Fenton v. HiSAN,
Inc.*, 174 F.3d 827, 832 (6ᵗʰ Cir. 1999). It is undisputed that John Robertson was the
selecting official for both the Sequatchie and Beersheba Springs postmaster positions and
that he knew about Plaintiff's EEO complaint prior to making his employment
determination.

Defendant asserts that, although Robertson was the selecting official and therefore

made the ultimate determination as to who would be hired, he was not the relevant decision-maker. (Court Doc. 24 at 36.) Defendant argues that the members of the review committees for each of these positions were the relevant decision-makers because the review committees "exclusively made the selections for interviewees" and Plaintiff was not recommended for an interview by either review committee. (*Id.*)

To determine who were the relevant decision-makers, the Court must consider the hiring process for the Beersheba Springs and Sequatchie postmaster positions. The evidence shows that the first step in the hiring process for a postmaster position is to post the position and accept applications. (Robertson Dep. at 57-58.) Once the applications have been submitted, Defendant's human resources department puts together a review committee that consists of three employees from outside the geographic area for the position being filled and who were ranked higher than postmaster. (*Id.* at 58.) The review committee confers over the applications and submits between three and five names to the selecting official for interviews. (*Id.*) The review committee sends non-selection letters to those applicants that it does not recommend for an interview. (*Id.* at 59.)

The selecting official then sets up and conducts interviews with the applicants recommended by the review committee. (*Id.* at 58.) Following the interviews, the selecting official chooses one applicant as the proposed candidate and submits his choice to the concurring official. The concurring official then reviews the proposed candidate and, if in agreement, signs off and submits the candidate to human resources. (*Id.* at 59.)

It is undisputed that Plaintiff was not recommended for an interview by the review committees for the Sequatchie and Beersheba Springs positions. (Court Doc. 31-10 at 36-

-18-

37.) Plaintiff received a non-selection letter from the chairperson of the review committee for the Beersheba Springs position informing her that of the review committee's determination. (Pl.'s Dep. at 252.) Plaintiff also received a non-selection letter for the Sequatchie position from a member of that position's review committee. (Id. at 282-83.)

Defendant contends that Plaintiff's adverse employment action – the failure to hire her for the Beersheba Springs and Sequatchie postmaster positions – resulted from the review committees' failure to recommend her for an interview. Plaintiff has failed to identify any USPS policy or procedure that would have allowed her to remain in consideration after the review committee failed to recommend her for an interview. Based on this evidence, the Court finds that the "relevant management decision-makers" for the Sequatchie and Beersheba Springs postmaster positions were the members of the review committee because the review committees' decision not to recommend Plaintiff for an interview was the termination of her consideration for these positions.

The members of the review committees for both the Sequatchie and Beersheba Springs positions have asserted that they did not have knowledge of Plaintiff's EEO charge at the time they made the decision not to recommend her for an interview. (Court Doc. 22-11 ¶¶ 4-6; Court Doc. 22-12 ¶¶ 4-6; Court Doc. 22-13 ¶¶ 4-6; Court Doc. 22-17 ¶¶ 4-6; Court Doc. 22-18 ¶¶ 4-6; Court Doc. 22-19 ¶¶ 4-6.) "Where the decision-maker denie[s] having knowledge of the alleged protected activity, the plaintiff must do more than offer conspiratorial theories or flights of fancy, speculations, hunches, intuitions, or rumors." Proffitt v. Metro. Gov't of Nashville, 150 Fed. App'x 439, 442 (6th Cir. 2005) (internal citations and quotations omitted). Plaintiff has admitted that she has no idea whether any of the members of the review committees had knowledge of her EEO complaint at the time

-19-

they failed to recommend her for an interview. (Pl.'s Dep. at 253-54.)

Because the members of the review committee were the relevant decision-makers with regard to the Sequatchie and Beersheba Springs positions, and Plaintiff has failed to establish a genuine dispute of fact with regard to whether they had knowledge of her protected activity, Plaintiff has failed to establish the second prong of her *prima facie* case. *See Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002) (affirming district court's grant of summary judgment when plaintiff failed to show that the relevant decision-makers had knowledge of the protected activity).

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation claims arising out of Defendant's failure to hire Plaintiff for the Sequatchie and Beersheba Springs postmaster positions and such claims are **DISMISSED WITH PREJUDICE**.

### 2. *Palmer postmaster position*

Defendant concedes, for the sake of its summary judgment motion, that Plaintiff has established a *prima facie* case of retaliation with regard to the Palmer postmaster position. Defendant argues, however, that it has a legitimate, non-discriminatory reason for not hiring Plaintiff and that Plaintiff cannot show that such reason was pretext for retaliation. (Court Doc. 24 at 31-34.)

Defendant asserts that Plaintiff was not hired for the Palmer position because a more qualified applicant, Rosanna Cleek, was hired. (*Id.* at 32.) John Robertson completed a Selection Form stating that he chose Cleek for the postmaster position because "Ms. Cleek has demonstrated her knowledge, skills, and abilities during the

-20-

interview and her performance as the OIC in the office. She has been successful at maintaining customer service while increasing revenue by 21.7%. She will continue to be successful as the postmaster in this office." (Declaration of John Robertson ("Robertson Decl."), Court Doc. 22-8, ex. 3.) That a more qualified individual was chosen is a legitimate, non-discriminatory reason for an employment decision. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1992).

Because Defendant has articulated a legitimate, nondiscriminatory reason for refusing to hire Plaintiff, the burden shifts back to the Plaintiff to show, by a preponderance of the evidence, that the legitimate reasons offered by the Defendant "were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Once the defendant has proffered a legitimate, nondiscriminatory reason for dismissal, an employer's explanation cannot be rejected "unless there is sufficient basis *in the evidence* for doing so. To allow the jury simply to refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

Plaintiff may meet this burden by offering evidence sufficient to establish that Defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate the defendant's decision not to hire the plaintiff; or (3) was insufficient to warrant the refusal to hire the plaintiff. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 576 (6th Cir. 2006); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff argues that irregularities in the selection process for the Palmer postmaster

-21-

position show that Defendant's proffered reason for not hiring Plaintiff was pretextual. (Court Doc. 31 at 30.) In support of this argument, Plaintiff claims that the two individuals that Robertson asked to assist him with the interviews were not qualified to do so because they had not completed the required Personnel Selection course. (Id.)

United States Postal Service Handbook EL 312, sec. 743.41 states that all "selecting officials and review committee members" must have completed a Personnel Selection Methods Web-based Training. Plaintiff does not allege that any member of the review committee was unqualified to serve in that position. It is undisputed that the selecting official for the Palmer position was John Robertson. Plaintiff does not allege that Robertson had not completed the personnel course, only that the two other interviewers had not.

The Court agrees with Defendant's argument that the regulation, on its face, does not require anyone other than the review committee members and the selecting official to have taken the personnel course. It is therefore irrelevant whether either of the two interviewers assisting Robertson had taken the personnel course. Accordingly, the Court finds that Plaintiff has not shown a genuine issue of material fact in dispute as to an inconsistency in the application process.

Plaintiff next argues that Defendant's proffered reason for not hiring her – that she was not the most qualified applicant – is false because she was actually more qualified than Cleek. (Court Doc. 31 at 26.) Whether qualifications evidence is sufficient to raise a question of fact as to pretext depends on whether a plaintiff offers other evidence of retaliation. Bender v. Hecht's Department Stores, 455 F.3d 612, 626 (6th Cir. 2006). If a plaintiff provides other evidence of retaliation, that evidence, coupled with the qualifications

-22-

evidence, may be enough to survive summary judgment. Id. at 627. However, where there is little or no probative evidence of retaliation, to survive summary judgment, an applicant's qualifications must be "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." Id.

Robertson's conclusion that Cleek was a better candidate than Plaintiff was based, in part, on his belief that Cleek performed better during the interview process than Plaintiff. (Robertson Dep. at 118.) During Plaintiff's interview, she was asked why she wanted to be the Palmer postmaster and was unable to answer, indicating only that she believed it was a hard question. (Id.) Robertson took her failure to answer that question as an indication that she would have difficulty making split-second decisions such as a postmaster is required to do. (Id.)

The Court acknowledges that the quality of an interview is a subjective factor in the hiring process and that "subjective reasons provide ready mechanisms for discrimination." Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 461 (6th Cir. 2004); see also White v. Baxter Healthcare Corp., __ F.3d __, 2008 WL 2607893, *9 (6th Cir. July 3, 2008) (interview is an "inherently subjective determination, and thus easily susceptible to manipulation in order to mask the interviewer's true reasons for making the [employment] decision.") However, the other members of the interview committee, neither of which had knowledge of Plaintiff's EEO complaint, agreed with Robertson's assessment of Plaintiff's performance during the interview. (Declaration of Dave Moses ("Moses Decl."), Court Doc. 22-10, ¶ 4; Declaration of Lisa Durham ("Durham Decl."), Court Doc. 22-9, ¶ 4.) The consistency of the interviewers' opinions diminishes the Court's concern about the inherent

-23-

subjectivity of an interview. *See Plumb v. Potter*, 212 Fed. App'x 472, 480 n.3 (6th Cir. 2007) (noting that concerns about the subjectivity of an interview were "lessened" because two interviewers had agreed that an applicant's interview was poor).

Perhaps most compelling, Plaintiff has admitted that she answered the question in a manner consistent with Robertson's recollection. (Pl.'s Aff. ¶ 30.) She claims that she was upset during her interview because Robertson told her not to be intimidated by him – a comment which she took to mean that he knew about her EEO complaint. (*Id.*) Although Plaintiff attempts to explain why she was flustered and performed poorly during her interview, there is no actual dispute over the quality of Plaintiff's interview. Plaintiff has therefore failed to show that Robertson's belief that Cleek performed better than Plaintiff during the interview was false.

Plaintiff also disputes Defendant's contention that objective data, specifically the USPS's National Performance Assessments ("NPA"), shows that Cleek was more qualified than Plaintiff. The Court has reviewed the evidence presented by both parties and finds that it does not show that Plaintiff was more qualified than Cleek. For example, Cleek was able to raise revenue by 12.7% during her time as OIC at Palmer while Plaintiff was never able to raise revenue more than 10.5%. (Robertson Decl. ¶ 2; Pl.'s Dep. at 245-46.) Cleek also reduced expenditures by 34.7% while Plaintiff had never been able to reduce expenditures by more than 25%. (Robertson Decl. ¶2; Pl.'s Dep. at 241-44.)

Plaintiff argues that Cleek's NPA scores were higher because the Palmer office has a larger customer base than any of the offices where she served as OIC. (Court Doc. 31 at 28.) She also questions the reliability of the NPAs because they do not show the increase from year to year and do not take mitigating factors into account. (*Id.* at 28-29.)

While these arguments attempt to explain why Plaintiff has been unable to match Cleek's performance on the NPAs, she does not dispute that Cleek's NPA scores are higher than hers.

Plaintiff argues that her and Cleek's NPAs were identical and that "composite scores" for the times that she served as OIC were "all similar" to the scores from Palmer during the time that Cleek was OIC. (Court Doc. 31 at 28-29.) Taking this argument as true and taking all of the evidence in the light most favorable to the Plaintiff, as the Court must do on the instant motion, it shows only that Plaintiff was *as qualified* for the postmaster position as Cleek, it does not show that her qualifications were "so significantly better than [Cleek's] qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627.

Plaintiff has failed to present any objective data showing that she was more qualified than Cleek for the Palmer postmaster position or that she has some qualifications that Cleek did not have. *See White*, __ F.3d __, 2008 WL 260789 at *9 (finding that plaintiff had established pretext with regard to qualifications evidence when it was undisputed that plaintiff possessed some qualifications that the selected applicant did not have). Both Cleek and Plaintiff had served as temporary OICs, Plaintiff three times and Cleek once. But Cleek's experience was arguably more relevant in that she served as temporary OIC at the Palmer post office, the very office for which Defendant was hiring. *See id.* (considering evidence that plaintiff had more sales experience with the actual products that the disputed position would be involved with selling as supporting pretext).

The Sixth Circuit has held that "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself,

-25-

to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." *Id.* "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's." *Id.* at 628.

In this case, Plaintiff has put forth no evidence supporting her pretext claim other than her argument that she was more qualified than Cleek. Plaintiff's own subjective belief in her qualifications compared to other applicants is not sufficient to call into question Defendant's judgment about Plaintiff's relative abilities and experience. *See Williams v. Columbus Metro. Housing Auth.*, 90 Fed. App'x 870, 873-74 (6th Cir. 2004). Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that reasonable decisionmakers could consider Plaintiff's and Cleek's qualifications and disagree over who was more qualified. Plaintiff has therefore failed to meet her burden on summary judgment of showing that Defendant's legitimate, non-discriminatory reason for not hiring Plaintiff was pretextual. *Bender*, 455 F.3d at 628.

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation claim arising out of Defendant's failure to hire Plaintiff for the Palmer postmaster position and such claim is **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Court Doc. 22] is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

The Clerk shall close the case.

SO ORDERED this 8th day of July, 2008.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE